FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2012 APR 24  P 4: 45

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| FRANK C. CARLUCCI III, <br> An individual, <br> 1207 Crest Lane <br> McLean, Virginia 22101 <br><br>                 Plaintiff, <br><br> v. <br><br> MICHAEL S. HAN <br> An individual, <br> 232 Garden Road <br> Palm Beach, Florida  33480 <br><br> and <br><br> ENVION, INC., <br> A Delaware and District of Columbia Corporation, <br> 510 Evernia Street <br> West Palm Beach, FL  33401 <br><br>                 Defendants. | Index No. 1:12CV451 <br> JCC/TCB <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, VIRGINIA SECURITIES LAW, AND VIRGINIA COMMON LAW <br><br> **Jury trial demanded** |

Plaintiff Frank C. Carlucci III ("Plaintiff" or "Mr. Carlucci") sues Envion, Inc. ("Envion") and Michael S. Han and alleges as follows:

### NATURE OF THE ACTION

1. By this action, Plaintiff Mr. Carlucci seeks to recover a minimum of $32,393,000 he invested in Defendant Envion. This substantial sum was invested by Mr. Carlucci through his purchase of a series of convertible notes that was induced by fraudulent and misleading statements made by Mr. Han, the founder, Chairman and Chief Executive Officer of Envion. Among other things, Mr. Han repeatedly misrepresented to Mr. Carlucci that Envion's critical

technology was subject to patent protection, that Envion had several lucrative deals in place for the sale of Envion's Oil Generators, and that the amounts invested by Mr. Carlucci would be used to further Envion's legitimate business interests. These representations were false. In reality, Envion has no patent protection over the technology upon which its success depends, Envion has no actual deals with any third-parties for the purchase of Envion's product, and the money Mr. Carlucci invested was actually diverted by Mr. Han for Mr. Han's personal use. The conduct alleged in this Complaint constitutes serious violations of the federal and Virginia securities laws and common law.

## THE PARTIES

2. Plaintiff Frank C. Carlucci III is a citizen of Virginia residing at 1207 Crest Lane, McLean, Virginia 22101.

3. Defendant Michael S. Han is a citizen of Florida residing at 232 Garden Road, Palm Beach, Florida 33480. Mr. Han is the founder, Chairman and Chief Executive Officer of Defendant Envion. Mr. Han controls all aspects of Envion's business endeavors, and he personally made the misrepresentations alleged herein that induced Mr. Carlucci to invest in Envion.

4. Envion is a corporation organized and existing under both the laws of the State of Delaware and the District of Columbia and has its principal place of business at 510 Evernia Street, West Palm Beach, Florida 33401. Until sometime in or around September 2010, Envion's principal place of business was 1027 33rd Street, N.W., Washington, D.C. 20007-3529.

5. Mr. Han utilized the instrumentalities of interstate commerce or of the U.S. mail in furtherance of the fraudulent scheme identified herein. For example, Mr. Han contacted Mr. Carlucci via telephone, email, and mail from Envion's Washington, DC and Florida offices to

arrange various meetings identified herein in which the investment was solicited based upon Mr. Han's false representations and omissions of material fact.

## JURISDICTION AND VENUE

6. This action arises under the federal securities law, including § 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240), the Virginia Securities Act (§ 13.1-502 and 13.1-522(A)), and Virginia common law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The Court also has subject matter jurisdiction over this action pursuant to 28 USC § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Personal jurisdiction exists over the Defendants pursuant to Virginia Code § 8.01-328.1 because a substantial part of the acts giving rise to this action, including the specific acts – the false representations and omissions of material fact Mr. Han made to Mr. Carlucci – causing tortious injury, occurred in the Commonwealth. Furthermore, each Defendant has sufficient minimum contacts with Virginia to make the exercise of jurisdiction over each Defendant by this Court consistent with traditional notions of fair play and substantial justice.

8. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims in this action occurred within this judicial district.

## FACTUAL BACKGROUND

### Envion and its Technology

9. Envion represents itself to the public as a technology company with exclusive patent rights to a unique technology that presents an environmentally sensitive, more efficient, and cost effective option for recapturing energy by converting waste plastic into useable oil.

10. Envion publicly represents on its website that the centerpiece of its technology, and the foundation for the entire company, is a "proprietary system, the Envion Oil Generator™, which transforms plastic waste back to its original form – crude oil."

11. Envion further describes the Envion Oil Generator on its website as a "proprietary breakthrough technology developed and perfected over the past 15 years" and the "first plastic waste to oil conversion platform of its kind."

### Soliciting Investment Funds

12. In approximately 2003, Mr. Carlucci met Mr. Han at the Regency Sport & Health Club where they both regularly play tennis.

13. In early 2004, Mr. Han approached Mr. Carlucci in an attempt to solicit funds for his company, Envion. At the time, Mr. Han described Envion to Mr. Carlucci as a "technology company" that would "bring technology [he] owned to the United States that his uncle had developed in Korea."[1] Mr. Han described that technology as "a patented process involving the conversion of plastic waste into oil."

14. Through a series of telephone calls, face-to-face meetings at Mr. Carlucci's residence and at the Regency Sport and Health Club in early 2004, which were often arranged via telephone calls and/or emails from Mr. Han from his Washington, D.C. office to Mr. Carlucci

---

[1] Unless otherwise specified, all quotations included herein refer exclusively to statements made by Mr. Han to Mr. Carlucci.

in Virginia, Mr. Han made numerous material misrepresentations and omissions of material fact in his disclosures to Mr. Carlucci in connection with his attempt to induce Mr. Carlucci to invest in Envion. Mr. Han specifically represented to Mr. Carlucci during these meetings that:

a. He (Mr. Han and Envion) had the exclusive patent for the Envion Oil Generators, which formed the foundation for Envion's business and success;

b. He (Mr. Han) had lined up the investment banking house, Allen & Company, to raise funds for Envion and that Allen & Company would be an equity investor in the company;

c. He (Mr. Han) had communicated with numerous other investors who were interested in investing in Envion, including Warren Buffet, Bill Gates, Dow Chemical, Morgan Stanley, and Goldman Sachs;

d. Along with Mr. Han, Envion was run by a number of "seasoned and highly regarded executives with extensive track records of success in the energy, technology, and finance industries, as well as the public sector";

e. He (Mr. Han) was negotiating a lucrative arrangement with Waste Management Company pursuant to which Waste Management would purchase rights to use the technology;

f. He (Mr. Han) was negotiating a lucrative arrangement with Allied Republic, another waste management firm and competitor of Waste Management;

g. Envion had a backlog of orders for its Oil Generator product; and

h. For each of these reasons, "Envion would be the best return Mr. Carlucci had received on any investment."

15. As Mr. Carlucci later came to find out, each of these representations was false and Mr. Han knew, or should have known, they were false at the time they were made.

16. Unaware of the falsity of Mr. Han's statements, Mr. Carlucci relied upon Mr. Han's misrepresentations and omissions of material fact, and was justified in doing so, in deciding to invest in Envion. Thus, on March 4, 2004, in direct and reasonable reliance on Mr. Han's representations and omissions of material fact, Mr. Carlucci made an initial investment in Envion in the amount of $500,000, which was in the form of a Convertible Promissory Note. The 2004 Convertible Promissory Note could be converted at any time by Mr. Carlucci into common stock of Envion – equity in the company.

17. Over the next several years, Mr. Han approached Mr. Carlucci on numerous other occasions seeking additional investment funds for Envion. On each such occasion, Mr. Han painted a very rosy picture for Envion, and expressly represented that the company had many favorable business arrangements (Gazprom, among others) that would result in an enormous return on any amounts invested by Mr. Carlucci and stated that Envion had exclusive patent rights over its critical technology. In each instance, Mr. Carlucci again reasonably relied upon Mr. Han's misrepresentation and omissions of material fact, and was justified in doing so, in deciding to invest in Envion. As Mr. Carlucci later came to find out, however, each of the representations Mr. Han made to induce his investment was false and Mr. Han knew, or should have known, they were false at the time they were made.

18. Specifically, pursuant to a series of convertible promissory notes made by Envion in favor of Mr. Carlucci, between November 2004 and April 2010, Mr. Carlucci invested the following additional funds in Envion through convertible notes issued on the dates indicated:

  a. November 11, 2004 - $400,000

    b. March 29, 2005 - $300,000

    c. June 3, 2005 - $175,000

    d. February 21, 2006 - $350,000

    e. June 29, 2006 - $250,000

    f. August 24, 2006 - $250,000

    g. April 1, 2007 - $168,000

    h. October 15, 2007 - $300,000

    i. August 1, 2008 - $900,000

    j. May 27, 2009 - $1,500,000

    k. July 20, 2009 - $2,000,000

    l. October 21, 2009 - $3,000,000

    m. December 27, 2009 - $200,000

    n. April 21, 2010 - $1,800,000

19.    Each of the investments identified above was evidenced by a convertible promissory note that accrued interest in the range of 8%-10% annually and could be converted at any time by Mr. Carlucci into common stock of Envion – equity in the company.

20.    In and around September and October 2010, Mr. Han approached Mr. Carlucci for an additional $20,000,000 investment. In connection with soliciting this additional $20,000,000 investment, Mr. Han made the following representations to Mr. Carlucci in a number of face-to-face meetings at Mr. Carlucci's residence, which were often arranged via telephone calls and emails to Mr. Carlucci from Mr. Han:

    a. Envion had a "done deal with Gazprom," one of the world's largest gas companies, pursuant to which Gazprom would invest millions in Envion in

exchange for a "49% ownership interest in Envion." As part of the deal, Mr. Han represented that he would become the chief executive officer of Gazprom's wholly owned waste disposal subsidiary that would fully utilize the technology;

b. Envion was close to a "deal" with Petrobas, a Brazilian energy company, which was comprised of two parts: (1) an off-take agreement, under which Envion would provide Envion Oil Generators to Petrobas; and (2) a joint venture, under which Petrobas would invest "substantial sums of money" in Envion;

c. Because a sizeable investment from Gazprom was a "done deal," Mr. Carlucci would get his investment back "in three weeks";

d. Envion had a "backlog of 2,000 orders" for its Envion Oil Generators;

e. The $20,000,000 would be used exclusively for two purposes: (i) for Envion to buy-out Mr. Han's uncle (Uncle Ma) who was becoming anxious to realize an immediate return on his investment in Envion, and (ii) investment capital in and exclusively for the legitimate business purposes of Envion; and

f. Mr. Han reasserted that Envion had the exclusive patent for the Envion Oil Generator technology.

21. As Mr. Carlucci later came to find out, each of these representations was false and Mr. Han knew, or should have known, they were false at the time they were made.

22. At the same time that Mr. Han solicited Mr. Carlucci's $20,000,000 investment, Mr. Han reasserted that "Envion would be the best return Mr. Carlucci would receive on any investment," possibly up to "50 times" the amount Mr. Carlucci had invested. To support this

-8-

representation, Mr. Han had previously presented Mr. Carlucci with a projection of the return Mr. Carlucci would receive. In connection with Mr. Han's solicitation of the $20,000,000 investment, Mr. Carlucci asked if the projection was still valid, and Mr. Han responded affirmatively, "Yes, it is." No cautionary language, qualifications, or conditions accompanied this projection. As it turned out, this was false and misleading in that there was no reasonable basis for such projection.

23. In direct and reasonable reliance on Mr. Han's representations set forth in Paragraphs 20 and 22 above, Mr. Carlucci invested the additional $20,000,000 in Envion as evidenced by a convertible promissory note dated October 10, 2010 that accrued interest at 8% annually and could be converted at any time by Mr. Carlucci into common stock of Envion – equity in the company.

24. Around the same time that Mr. Carlucci made the additional $20,000,000 investment, and without his knowledge, Mr. Han:

    a. Closed Envion's Washington D.C. headquarters and moved the company to West Palm Beach, Florida;

    b. Purchased a personal residence in Palm Beach, Florida valued at approximately $3,500,000 and, on information and belief, made substantial and costly renovations to that residence. Further, on information and belief, Mr. Han has claimed a Florida Homestead Exemption over this newly purchased residence;

    c. On information and belief, provided himself (Mr. Han) with a $5,000,000 annual salary for his employment with Envion that was not disclosed to Mr. Carlucci.

25. In the summer of 2011, Mr. Carlucci's prior investments in Envion were rolled into one convertible promissory note in the amount of $32,393,000. This convertible note, dated August 4, 2011, accrues interest at 5% annually and could be converted at any time by Mr. Carlucci into common stock of Envion – equity in the company.

26. In connection with the issuance of the August 4, 2011 Convertible Note, Mr. Han reasserted his prior false representations to Mr. Carlucci during a series of face-to-face meetings at Mr. Carlucci's residence, the Regency Sport & Health Club, and at Mr. Carlucci's office in Washington, DC. Mr. Han specifically represented to Mr. Carlucci:

  a. Mr. Carlucci would receive a return on his total investment of "possibly 50 times the amount invested," due to the "done deal" with Gazprom, and other specific projects and commitments Mr. Han had obtained or was in the process of closing for Envion, including the deal with Petrobas,;

  b. All of the funds invested by Mr. Carlucci had been used exclusively for the benefit of Envion and its direct business, including the "buy out" of Mr. Han's uncle alleged in Paragraph 20(e) above; and

  c. Envion had the exclusive patent for the Envion Oil Generator technology.

27. During these same meetings, Mr. Han also falsely represented that former President Bill Clinton had agreed to become affiliated with Envion, possibly as a member of its Board of Directors, and that he had communicated with former President George W. Bush, who was interested in investing in Envion, as well.

28. As Mr. Carlucci later came to find out, each of these representations was false and Mr. Han knew, or should have known, they were false at the time they were made.

29. Mr. Carlucci reasonably relied upon Mr. Han's misrepresentations and omissions of material fact, and was justified in doing so, in accepting the new convertible note.

30. In March, 2012, Mr. Carlucci began to suspect for the first time that the representations made by Mr. Han were materially false and/or that Mr. Han had omitted material facts in his representations to Mr. Carlucci that induced Mr. Carlucci to invest in Envion.

31. Specifically, an energy consultant who traveled to Brazil with Mr. Han in March 2012, informed Mr. Carlucci for the first time that Envion had no joint venture with Petrobas or any reasonable basis for concluding that a joint venture would materialize.

32. The information provided by the energy consultant caused Mr. Carlucci to engage in further investigation of Mr. Han and Envion. As a result of that investigation, Mr. Carlucci learned for the first time between late March and mid-April, 2012 that:

   a. Envion did not own any patent for its Envion Oil Generator technology;

   b. Envion did not use the $20,000,000 investment to buy-out Mr. Han's uncle or for any legitimate purpose of Envion. Instead, Mr. Han used the funds to move the company to Florida and purchase a multi-million dollar personal residence for himself.

   c. As alleged above, there was no "deal" with Gazprom or Petrobas;

   d. On information and belief, Envion did not have a "backlog" of "2,000 orders" for its Oil Generators;

   e. None of the "all star list" of investors alleged in Paragraph 14(c) above had in fact invested any funds in Envion;

    f. Former President Bill Clinton had no affiliation with Envion and former President George W. Bush had not expressed an interest in investing in Envion;

    g. Envion had at most a few months of available financial resources before it would be completely insolvent and unable to pay any of its obligations.

33. When Mr. Carlucci learned of this information, he requested the opportunity to have an accountant audit the books, records, and intellectual property of Envion. Mr. Han refused, instead writing that he was busy with other business for the immediate future, and requesting a meeting with Mr. Carlucci, presumably to further deceive him about the true state of affairs with Envion.

34. As a direct and proximate result of the foregoing conduct of Envion and Mr. Han, Mr. Carlucci has been damaged in an amount no less than $32,393,000.

35. All conditions precedent to this action have been performed, satisfied, or otherwise discharged.

## COUNT I
### (Federal Securities Fraud -- Against All Defendants)

36. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1 through 35 above.

37. As described in detail above, Defendants made misrepresentations and omissions of material fact to Mr. Carlucci in connection with the purchase and sale of the convertible notes.

38. The convertible notes are securities.

39. Defendants knowingly and intentionally made the foregoing representations and omissions with the intent to deceive, manipulate, and/or defraud Plaintiff or, at a minimum, made the foregoing representations and omissions of material fact recklessly, unreasonably and with

such an extreme departure from the standard of ordinary care as to present a danger of misleading the Plaintiff to the extent that the danger was either known to the Defendants or so obvious that the Defendant must have been aware of it.

40. Plaintiff did not know the falsity of Defendants' misrepresentations and omissions, and instead justifiably relied upon the false misrepresentations and omissions.

41. Plaintiff's reliance upon Defendants' misrepresentation was the proximate cause of injury to Plaintiff.

42. Plaintiff suffered substantial damages and pecuniary loss as a direct and proximate result of the fraudulent conduct of Defendants, in an amount to be proven at trial, but not less than $32,393,000.

## COUNT II
### (Virginia State Securities Fraud Against All Defendants)

43. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1 through 35 above.

44. As described in detail above, Defendants made untrue statements and omissions of material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to Mr. Carlucci in connection with the purchase and sale of the of the convertible notes.

45. The convertible notes are securities.

46. At the time Defendants made the false and/or misleading statements and/or withheld material information, Defendants knew or had reasonable grounds to believe the statements were false and/or misleading because the danger of misleading the Plaintiff was either known to the Defendant or so obvious that the Defendant must have been aware of it.

47. As a direct and proximate result of Defendants' false and/or misleading representations and omissions of material fact, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $32,393,000.

## COUNT III
### (Actual Fraud Against All Defendants)

48. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1 through 35 above.

49. As described in detail above, Defendants made false representations of material fact to Mr. Carlucci in connection with the purchase and sale of the convertible notes.

50. Each of Defendants' misrepresentations was made intentionally and knowingly with the intent to mislead Plaintiff.

51. Each of Defendants' misrepresentations was made by Defendant, who had no intention of performing at the moment he made the promises alleged herein.

52. Plaintiff relied upon the Defendants' misrepresentations of material fact and was induced to purchase into the convertible notes in 2010 and 2011.

53. As a direct and proximate result of Defendants' false and/or misleading representations and omissions of material fact, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $32,393,000.

## COUNT IV
### (Constructive Fraud/Negligent Misrepresentation Against All Defendants)

54. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1 through 35 above.

55. As described in detail above, Defendants made misrepresentations and omissions of material fact to Mr. Carlucci in connection with the purchase and sale of the convertible notes.

56. Plaintiff justifiably relied on Defendants' material misrepresentations and omissions and based thereon purchased the Convertible Notes.

57. As a direct and proximate result of Defendants' false and/or misleading representations and omissions of material fact, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $32,393,000.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A. Enter judgment in its favor on all counts in an amount to be proven at trial, but for an amount not less than $32,393,000;

B. Disgorgement from Defendants and restitution to Plaintiff of all funds paid to Defendants in connection with the convertible notes;

C. An award of statutory interest, as applicable, including an award of statutory interest set forth in the Virginia Securities Act;

D. An award of punitive damages;

E. Award Plaintiff attorneys' fees and costs;

F. Award Plaintiff pre-judgment and post-judgment interest on all amounts;

G. Award Plaintiff such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury of all issues triable by right of jury.

Respectfully submitted,

Dated: April 24, 2012

J. Douglas Baldridge (VA Bar No. 34327)
Danielle R. Foley (*pro hac vice application to be filed*)
George Kostolampros (*pro hac vice application to be filed*)
Vincent E. Verrocchio (VA Bar No. 40246)
Molly T. Geissenheiner (VA Bar No. 78508)
VENABLE LLP
575 7th Street, NW
Washington, DC 20004-1601
202-344-4703 Telephone

*Counsel for Plaintiff Frank C. Carlucci III*